**UNITED STATES of America, Plaintiff,**

v.

**BAROID CORPORATION, Baroid Drilling Fluids, Inc., DB Stratabit (USA) Inc., and Dresser Industries, Defendants.**

No. 93–2621 (RCL).

United States District Court, District of Columbia.

Feb. 2, 2001.

---

**102**

Angela Louise Hughes, U.S. Department of Justice, Anti–Trust Division, Washington, DC, William Bradford Reynolds, Howrey, Simon, Arnold & White, Washington, DC, for plaintiff.

Neil Winston Imus, Vinson & Elkins, L.L.P., Washington, DC, for defendants.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

Now before the Court is a Joint Motion by the plaintiff United States and by Diamond Products International [1] ("DPI") to modify the Final Judgment entered in this case on April 12, 1994. Halliburton Company, who now owns the defendant businesses, contests this modification. After a review of the parties' memoranda, the applicable law, and for the following reasons, the Court DENIES the plaintiff's motion.

### BACKGROUND

In the early 1990s, Dresser Industries wished to purchase Baroid Corporation, Baroid Drilling Fluids, Inc., and DB Stratabit, Inc. (collectively known as "Baroid"). The Antitrust Division of the Department of Justice reviewed the transaction and approved it subject to several conditions. One of those conditions was that Dresser divest itself of Baroid's diamond drill bit business. A related condition required

---

1. Pursuant to this Court's permission, *see* Order Granting Leave to Join, June 13, 2000, Diamond Products International "joined the United States in asking this Court to modify

... the Final Judgment" on June 13, 2000. *See* Stipulation and Order, June 13, 2000, at 1.

that the purchaser of the drill bit business refrain from selling it to any of the four major drilling service companies during the 10–year life of the Final Judgment. According to the agreement, those companies included Dresser itself, as well as Baker Hughes, Inc., Camco, Inc., and Smith International. Electing to purchase Baroid, Dresser complied with the Antitrust Division's condition and sold Baroid's drill bit business to Diamond Products International ("DPI"). Since 1994, DPI has complied with its duty not to sell the drill bit business to any of the four prohibited companies.

Now DPI wishes to sell the diamond bit drill business that it acquired as a result of the Dresser–Baroid transaction. The main reason for this sale appears to be DPI's inability to "develop much of a customer base" for the product. *See* Brief for DPI, Sept. 18, 2000, at 2. Although the drill bits are apparently quite competitive with, and even superior to, other drill bits, DPI has only been able to garner about 6% of the drill bit sales in the U.S. *Id.* In comparison, the four major drill bit manufacturers each control between 20 and 25% of the drill bit market. *Id.*

The reason for this marketing failure seems to be that DPI, in comparison with the major drill bit suppliers, is not a full service oil exploration supplier. That is, DPI only provides a small boutique of drilling products and services, and cannot provide the "broad panoply" of such products and services which an oil company might need. According to DPI and the government, oil exploration companies "insist ... on 'one-stop shopping' so they can purchase essentially all of their drilling needs from a single supplier." *Id.* at 5. In the view of DPI and the government, this purchasing style is unlikely to change, and DPI's potential for becoming a full service provider is very weak. *Id.* at 2.

Based on these conditions in the drill bit market, the Antitrust Division proposes that DPI be permitted to sell its diamond drill bit business to any of the major drill bit suppliers, except Dresser—whom the government found in 1994 to be unable (consistent with antitrust regulations) to own the diamond drill bit business. Thus, the Antitrust Division proposes that the April 12, 1994 Final Judgment be modified so as to allow DPI to sell its diamond bit drill business to either Baker Hughes, Camco, or Smith.

In 1998, Dresser Industries was purchased by Halliburton Corporation in a transaction unrelated to this litigation. Halliburton now comes before the Court as the successor to all of the named defendants: Dresser Industries, Baroid Corporation, Baroid Drilling Fluids, Inc., and DB Stratabit, Inc. Halliburton opposes the Antitrust Division's proposed modification and argues that, under the appropriate standard of review in modification decisions such as this one, the Antitrust Division's proposed modification is unacceptable.

### ANALYSIS

#### I. Standard of Review

■ In the antitrust field, two standards govern the modification of a consent decree. If all parties to the agreement consent to the modification, a court need only review the modification to ensure that it is in the "public interest." *United States v. Western Elec. Co.* 900 F.2d 283 (D.C.Cir.1990) ("[W]hen all parties to a decree assent to a particular modification, the relevant inquiry for the court is whether the resulting array of rights and liabilities comports with the 'public interest' "). *See also United States v. American Cyanamid Co.,* 719 F.2d 558, 565 (2d Cir.1983). This standard is necessarily deferential, as the expertise of the Antitrust Division must be respected as long as all interested parties consent to the modification.

■ In cases where there is a disagreement as to the proposed modification, however, a more stringent standard is necessarily in order. This is only logical, as the

unelected antitrust officials must be constrained in some way from imposing their interpretation of the "public interest" on unwilling parties. Thus, as the Supreme Court and the Court of Appeals have held, when parties disagree over proposed modifications to a consent decree, the party seeking modification of a final judgment or consent decree in an antitrust case must show that "a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance." *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 393, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992); *United States v. Western Elec. Co.,* 46 F.3d 1198, 1202–03 (D.C.Cir.1995).

In the case at hand, Halliburton objects strongly to the government and DPI's proposed modification. And, by virtue of its purchase of Dresser, Halliburton is a party to the consent decree. Thus, the Court concludes that the proposed modification must be based on a "significant change in facts or law" and must be "suitably tailored to the changed circumstance[s]."

The government argues that the public interest standard should be applied because its modification is not *actually* being contested. In this regard, the government asserts that, although Halliburton opposes the modification, Halliburton does not possess an interest that the consent decree "was designed to protect." Brief for Government, Sept. 27, 2000, at 2. The "central purpose" of the decree, according to the government, was not to control the dissemination of the diamond drill bit technology, but rather was to deprive Halliburton of "ownership and control of the [diamond drill bit] assets." *Id.* Thus, the government argues that, because Halliburton's right to "ownership and control of the [diamond drill bit] assets" is not affected, "Halliburton has no legal or equitable status" to make its objection trigger the more stringent "changed circumstances" standard of review. Brief for Government, Sept. 6, 2000, at 14.

The government's argument, despite its cleverness, is contrary to established law and sound reason. Although a consent decree has similarities to both a contract and a public law, *see Western Electric,* 46 F.3d at 1205, the Supreme Court and this Circuit have recognized that, in interpreting a consent decree in the antitrust context, courts should generally adhere to contract-based rules of interpretation. *See United States v. ITT Continental Baking Co.,* 420 U.S. 223, 235, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975); *Richardson v. Edwards,* 127 F.3d 97, 101 (D.C.Cir.1997). As the Court of Appeals stated recently: "[A]n antitrust consent decree cannot be said to have a purpose; rather, the parties have purposes, generally opposed to each other, and the resultant decree embodies as much of these opposing purposes as the respective parties have the bargaining power and skill to achieve." *United States v. Microsoft,* 147 F.3d 935, 946 (D.C.Cir.1998) (quoting *U.S. v. Armour,* 402 U.S. 673 681–82, 91 S.Ct. 1752, 29 L.Ed.2d 256 (1971)). In light of these principles, it is incorrect to conclude that Halliburton has no interest in the consent decree's restrictions on the sale of the diamond drill business. Rather, it is only fair to assume that Dresser—now owned by Halliburton—bargained for each of the provisions within the four corners of the contract.

Thus, the Court holds that Halliburton has a legitimate interest in the provision which the government and DPI wish to modify. Halliburton's objection to this modification therefore triggers the application of the "changed circumstances" standard of review.

## II. The Proposed Modification

The Court is now presented with the question of whether "a significant change in facts or law warrants revision of the decree and [whether] the proposed modification is suitably tailored to the

changed circumstance." *Rufo,* 502 U.S. at 393, 112 S.Ct. 748. The government has argued only that its modification is in the public interest, not that its modification is warranted by a change in circumstances. Nonetheless, the Court, undertaking its own review, finds that the proposed modification is violative of the *Rufo* standard.

■ As an initial matter, a party seeking a modification to an antitrust consent decree cannot rely on a change in circumstances that were anticipated, or should have been anticipated, at the time the consent decree was signed. *See United States v. Western Electric Co.,* 46 F.3d 1198, 1204 (D.C.Cir.1995). To permit otherwise would be contrary to standard principles of contract interpretation which, as directed by the Supreme Court and Court of Appeals, must underlie this Court's analysis. *See, e.g.,* E. Allen Farnesworth, Farnesworth on Contracts § 9.6, at 552–58 (1990) (explaining that the principle of impractibility in contract law withholds a contract modification when parties should anticipate the "business risks which are fairly to be regarded as part of the dickered terms"). Recently, the Court of Appeals commented on this principle in the antitrust context:

> If it is clear that a party anticipated changing conditions that would make performance of the decree more onerous, but nevertheless agreed to the decree, that party would have to satisfy a heavy burden to convince a court that it agreed to the decree in good faith, made a reasonable effort to comply with the decree and should be relieved of the undertaking under [*Rufo* ].

*Id.* Thus, in evaluating the circumstances of this case, the Court will be especially mindful of what circumstances the parties reasonably expected, and should have reasonably expected, at the time the agreement was signed.

In the Court's view, DPI's failure to gain a competitive share of the diamond drill bit market does not constitute a change in circumstances sufficient to warrant a modification of the consent decree. *Even if*

such circumstances could be construed as an affirmative change in circumstances, it is clear that such a change should have been anticipated by the Antitrust Division when the consent decree was signed. It is quite possible that, in this case, the Antitrust Division was the most experienced and sophisticated party involved in the consent decree. It was undoubtedly familiar with the oil exploration market, its participants, structure, and possible market behavior. Thus, it was surely within the comprehension of a party so situated to foresee the possibility that a company with very little market share would find it difficult to compete in an oligopoly where customers prefer "one-stop shopping." If the Antitrust Division did not foresee this, then it reasonably should have.

The Court therefore finds that the *Rufo* standard has not been met, and that the proposed modification is impermissible.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the government's motion to modify the final judgment is [72, 79–1] DENIED; further, it is

ORDERED that Diamond Products International's motion to modify the final judgment [72, 81–2] is DENIED.

SO ORDERED.